Anthony J. Orshansky (SBN 199364)
anthony@counselonegroup.com
Alexandria Kachadoorian, (SBN 240601)
alexandria@counselonegroup.com
Justin Kachadoorian (SBN 260356)
justin@counselonegroup.com
**COUNSELONE, P.C.**
9301 Wilshire Boulevard, Suite 650
Beverly Hills, CA 90210
Telephone: (310) 277-9945
Facsimile:  (424) 277-3727

Attorneys for Plaintiff DWAYNE BALLARD,
on behalf of himself and others similarly situated

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DWAYNE BALLARD, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PACIFIC LOGISTICS CORP, an Arizona corporation, and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 2:18-cv-10320-DSF-JC<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF COSTS TO CLASS COUNSEL, AND INCENTIVE AWARD TO NAMED PLAINTIFF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Filed concurrently herewith are: Declarations of Anthony J. Orshansky and Dwayne Ballard in Support of Motion for Final Approval and Motion for Attorneys' Fees, and [Proposed] Final Approval Order and Judgment]<br><br><u>Final Approval Hearing</u><br>Date:          March 23, 2020<br>Time:          1:30 p.m.<br>Place:          Courtroom 7-D |

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on March 23, 2020 at 1:30 p.m., or as soon as the matter may be heard, in the United States District Court for the Central District of California, 350 W. 1st Street, Los Angeles, California 90012 in Courtroom 7D, before the Honorable Dale S. Fischer, Plaintiff Dwayne Ballard ("Plaintiff") will and hereby does move the Court for an Order granting Plaintiff's Motion For Attorneys' Fees, Reimbursement Of Costs To Class Counsel, And Incentive Award To Named Plaintiff pursuant to the class action Settlement Agreement entered into by the Parties herein and Order granting preliminary approval issued by the Court on October 16, 2019.

This Motion is based upon this Notice, the attached Memorandum of Points and Authorities, the Declaration of Anthony J. Orshansky, the Declaration of Dwayne Ballard, and the Declaration of Abel E. Morales, along with the attached exhibits and supporting documents, and also Plaintiff's Motion For Final Approval Of Class Action Settlement ("Motion For Final Approval"), the [Proposed] Final Approval Order and Judgment, filed concurrently herewith, plus all pleadings, records, and files in the case, and such evidence and argument as may be presented at the hearing. This Motion is also made pursuant to L.R. 7-3 following the conference of counsel and in accordance with the Parties' Settlement Agreement. Defendant's counsel has reviewed the documents being filed in support of this Motion and does not oppose it, though Defendant has reserved the right to submit a Notice of Non-Opposition, together with any additional points and authorities for the Court's consideration.

///

///

///

///

1

Dated: January 24, 2020

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,
**COUNSELONE, P.C.**

By: /s/ *Anthony J. Orshansky*
     Anthony J. Orshansky
     Justin Kachadoorian
Attorneys for Plaintiff Dwayne Ballard
and the Settlement Class Members

# **TABLE OF CONTENTS**

*page*

I.   INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

II.  ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.   Attorneys' Fee Awards As Percentage of Common Fund
        Settlements. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.   Class Counsel's Fee Request for 25% of the Common Fund
        Is Appropriate under the <u>Vizcaino</u> Factors. . . . . . . . . . . . . . . . . . . . .5

        1.   The "Results Achieved," "Risks of Litigation," and
            "Benefits to the Class" Factors. . . . . . . . . . . . . . . . . . . . . . .5

        2.   The "Market Rate" and "Contingent Nature and Opportunity
            Costs" Factors. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

        3.   The "Reaction of the Class" Factor. . . . . . . . . . . . . . . . . . . . 10

        4.   The "Lodestar Cross-check" Factor. . . . . . . . . . . . . . . . . . . . 10

        5.   Class Counsel's Hourly Rates Are Reasonable. . . . . . . . . . . 13

        6.   Class Counsel's Hours Spent on This Case Are Reasonable. .14

    C.   Class Counsel's Request for Reimbursement of Litigation Costs
        Is Also Reasonable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    D.   The Requested Class Representative Incentive Award Is
        Reasonable and Should Be Granted . . . . . . . . . . . . . . . . . . . . . . . .16

III. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

In re Activision Sec. Litig.,
  723 F.Supp. 1373 (N.D. Cal. 1989).............................................................4, 5

In re Am. Apparel, Inc. S'holder Litig.,
  No. 10 Civ. 06352, 2014 WL ........................................................................4

Bateman v. Am. Multi-Cinema, Inc.,
  623 F.3d 708 (9th Cir. 2010) ........................................................................7

Bihun v. AT&T Information System,
  13 Cal.App.4th 976 (1993) ...................................................................11, 13

Blum v. Stenson,
  465 U.S. 886 (1984) .........................................................................1, 10, 13

Camacho v. Bridgeport Financial, Inc.,
  523 F.3d 973 (9th Cir. 2008) ......................................................................13

Cundiff v. Verizon California,
  167 Cal.App.4th 718 (2008) ........................................................................11

Desai v. ADT Security Services, Inc.
  No. 11-1925 (N.D. Ill. Feb. 27, 2013)........................................................18

Evans v. Jeff D.,
  475 U.S. 717, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986) ................................3

Glendora Comm. Redev. Agency v. Demeter,
  155 Cal.App.3d 456 (1984) ........................................................................12

Graham v. DaimlerChrysler Corp.,
  34 Cal.4th 553 (2004)..................................................................................12

Hopson v. Hanesbrands, Inc.,
  2009 WL 928133 (N.D. Cal. Apr. 3, 2009) ................................................18

Ikuseghan v. Multicare Health Svs.,
  2016 WL 4363198 (W.D. Wash. 2016) ......................................................18

Jacobs v. Cal. State Auto. Ass'n Inter-Ins. Bur.,
   2009 WL 3562871 (N.D Cal. Oct. 27, 2009) ...................................... 18

Kerr v. Screen Extras Guild, Inc.,
   526 F.2d 67 (9th Cir. 1975) .................................................................. 11

Landsman & Funk, P.C. v. Skinder-Strauss Assocs.,
   2015 WL 2383358 (D.N.J. May 18, 2015), *aff'd*, 639 F.App.'x 880
   (3rd Cir. 2016) ...................................................................................... 18

Long v. Tommy Hilfiger U.S.A.,
   671 F.3d 371 (3d Cir. 2012) .................................................................... 6

Martin v. AmeriPride Serv., Inc.,
   2011 WL 2313604 (S.D. Cal. June 9, 2011) ........................................... 9

In re Media Vision Tech. Sec. Litig.,
   913 F.Supp. 1362 (N.D. Cal. 1996) ...................................................... 16

Morganstein v. Esber,
   768 F.Supp. 725 (C.D. Cal. 1991) ......................................................... 10

Odrick v. UnionBanCal. Corp.,
   2012 WL 6019495 (N.D. Cal. Dec. 3, 2012) ......................................... 18

Parks v. Eastwood Ins. Servs., Inc.,
   240 Fed. App'x 172 (9th Cir. 2007) ......................................................... 9

Paul, Johnson, Alston & Hunt v. Graulty,
   886 F.2d 268 (9th Cir. 1989) .......................................................... 4, 9, 10

Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,
   478 U.S. 546 (1986) .............................................................................. 11

Radcliffe v. Experian Information Solutions, Inc.,
   715 F.3d 1157 (9th Cir. 2013) ............................................................... 18

Safeco Ins. Co. of Am. v. Burr,
   551 U.S. 47 (2007) ................................................................................... 6

Sandoval v. Tharaldson Employee Mgmt., Inc.,
   2010 WL 2486346 (C.D. Cal. June 15, 2010) [1%].............................. 18

- vi -

Serma v. Big A Drug Stores, Inc.,
    No. 07-0276 CJC, 2007 U.S. LEXIS 82023 (C.D. Cal. Oct. 9,
    2007) ................................................................................................. 7

Shlahtichman v. 1-800 Contacts, Inc.,
    615 F.3d 794 (7th Cir. 2010) ............................................................ 6

Singer v. Becton Dickinson & Co.,
    2010 WL 2196104 (S.D. Cal. June 1, 2010) ..................................... 9

Six Mexican Workers v. Arizona Citrus Growers,
    904 F.2d 1301 (9th Cir. Cal. 1990) ............................................. 9, 10

State of Fla. v. Dunne,
    915 F.2d 542 (9th Cir. 1990) ............................................................ 4

Staton v. Boeing Co.,
    327 F.3d 938 (9th Cir. 2003) ............................................................ 3

Steiner v. American Broadcasting Corp., Inc.,
    2007 U.S. App. LEXIS 21061 (9th Cir. 2007) ................................ 12

Sutton v. Bernard,
    504 F.3d 688 (7th Cir. 2007) ............................................................ 4

Swedish Hosp. Corp. v. Shalala,
    1 F.3d 1261 (D.C. Cir. 1993) ............................................................ 3

Thieriot v. Celtic Ins. Co.,
    2011 WL 1522385 (N.D. Cal. Apr. 21, 2011) ................................ 18

Torres v. Pet Extreme,
    No. 13-01778-LJO, 2015 U.S. Dist. LEXIS 5136 (E.D. Cal. Jan.
    15, 2015) ............................................................................................ 7

In re Toys 'R' Us FACTA Litig.,
    295 F.R.D. 438 (C.D. Cal. 2014) ...................................................... 7

In re United Energy Corp. Sec. Litig.,
    1989 WL 73211 (C.D. Cal. March 9, 1989) .................................... 15

Van Vranken v. Atlantic Richfield Co.,
    901 F.Supp. 294 (N.D. Cal. 1995) ................................................... 16

<u>Vasquez v. Coast Valley Roofing, Inc.</u>,
  266 F.R.D. 482 (E.D. Cal. 2010) ........................................................................... 9

<u>Vizcaino v. Microsoft Corp.</u>,
  290 F.3d 1043 (9th Cir. 2002) ................................................................... *passim*

<u>Wershba v. Apple Computer, Inc.</u>,
  91 Cal.App.4th 224 (2001) ................................................................................. 12

<u>Wiles v. State Farm Fire & Cas. Co.</u>,
  512 F.3d 565 (9th Cir. 2008) ............................................................................... 6

<u>Williams v. Costco Wholesale, Corp.</u>,
  2010 WL 2721452 (S.D. Cal. July 7, 2010) ...................................................... 18

<u>Wilson v. Bank of Am Natl. Trust & Savs. Assn.</u>,
  No. 643872 (Cal. Sup. Ct. Aug. 16, 1982) ......................................................... 12

**Statutes**

15 U.S.C. § 1681n ............................................................................................... 5-7

15 U.S.C. §§ 1681, *et seq.* ............................................................................ 5-7, 15

**Other Authorities**

Fed. R. Civ. P., Rule 23(h) .................................................................................... 3

Fed. R. Civ. P., Rule 23 ...................................................................................... 10

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Dwayne Ballard ("Plaintiff") and Defendant Pacific Logistics Corp ("Defendant" or "PLC") reached a class action settlement ("Settlement") which on October 16, 2019, was preliminarily approved by the Court. [D.E. 37] As part of that Settlement, the Court conditionally appointed class counsel, CounselOne, P.C. ("Class Counsel"), who negotiated a class settlement that made available for payment a ***non-reversionary Three Hundred Thousand Dollars ($300,000.00)*** into a Settlement Fund for the benefit of 391 Class Members.[1] The Settlement obtained meaningful and appropriate monetary benefits for the Class.  In connection with the Settlement, Class Counsel requests an award of attorneys' fees of ***$75,000 – equal to 25% of the $300,000*** ("Settlement Fund") and which is ***less than lodestar cross-check*** of hours worked. *See,* Declaration of Anthony J. Orshansky In Support Of Plaintiff's Motion For Final Approval Of Class Action Settlement And Motion For Attorneys' Fees, Reimbursement Of Costs To Class Counsel, And Incentive Award ("Orshansky Decl.") ¶¶ 71-78 filed concurrently herewith.

This fee is consistent with applicable Ninth Circuit authority and with fees awarded in similar cases in this District, and its reasonableness is confirmed by the lodestar cross-check. The requested award is eminently reasonable under the common fund doctrine. *See,* Blum v. Stenson*,* 465 U.S. 886, 900 n. 16 (1984). Class Counsel have obtained a very strong result for the Class Members. Here, each Class Member who does not opt out will automatically receive a check without having to file a claim form. Further, the Class Member response has been overwhelmingly positive: out of 391 Class Notices mailed, only 5 Class Members have opted out,

---

[1] Based on Defendant's representations, Plaintiff and Class Counsel believed that the Settlement Class size was 396 individuals at the time of seeking preliminary approval. However, when Defendant culled its records and produced its class data to the Settlement Administrator, it was shown that the actual count of non-duplicate entries was 391 unique individuals. *C.f.,* Plaintiff's Motion For Preliminary Approval, p. 11-12, previously filed [D.E. 32], for further discussion and Orshansky Decl. ¶ 17.

1   and no objections have been made. *See,* <u>Declaration Of Abel E. Morales Regarding</u>

2   <u>Notification And Settlement Administration</u> ("Morales Decl.") ¶¶ 5, 11-12.

3          Additionally, in connection with the Settlement, Class Counsel seeks an

4   award of actual costs incurred up to $10,000 - specifically, $7,012.45 in

5   unreimbursed litigation expenses. (<u>Orshansky Decl</u>. ¶¶ 79-82.)   Finally, in

6   connection with the Settlement, Plaintiff Dwayne Ballard also seeks an award of

7   $5,000 as consideration for his service as a class representative and in consideration

8   for the general release he is giving PLC. (<u>Id</u>. ¶¶ 83-91.) *See,* <u>Declaration Of Dwayne</u>

9   <u>Ballard In Support Of Plaintiff's Motion For Final Approval Of Class Action</u>

10  <u>Settlement And Motion For Award Of Attorneys' Fees, Reimbursement Of Costs</u>

11  <u>To Class Counsel, And Incentive Award To Named Plaintiff</u> ("Ballard Decl.") filed

12  concurrently herewith.

13         These requests are reasonable and appropriate because:

14  •   District courts within the Ninth Circuit consider 25% the benchmark and

15      routinely award attorneys' fees in higher amounts, often 33% or more, of the

16      common fund settlement. *See,* <u>Section</u> II.B.2, *infra*;

17  •   Class Counsel obtained a favorable result for the Class Members in the face

18      of challenging factual and legal hurdles in terms of certification and the

19      likelihood of prevailing on the merits. To wit, Class Counsel obtained

20      substantial monetary recovery on behalf of a nationwide class and in the

21      context of "all-or-nothing" stakes where the statutory damages were at

22      considerable risk given the fluctuating post-<u>Spokeo</u> case progeny;

23  •   Here, the requested $75,000 in attorneys' fees and costs up to $10,000 were

24      the result of arm's-length negotiations after substantial discovery;

25  •   The requested attorneys' fees and costs were fully disclosed to Class

26      Members in the Court-approved Class Notice; and

27  •   The requested incentive award to Plaintiff was fully disclosed to Class

28      Members in the Court-approved Class Notice.

- 2 -

1    For the reasons set forth in greater detail below, Plaintiff respectfully submits
2    that the requested attorneys' fees, costs and expenses, and incentive award are fair
3    and reasonable, and should be approved.

4    **II.    ARGUMENT**

5    **A.    Attorneys' Fee Awards As Percentage of Common Fund**
6    **Settlements.**

7    Rule 23(h) of the <u>Federal Rules of Civil Procedure</u> provides that a court may
8    award reasonable attorneys' fees and costs in a certified class action when authorized
9    "by the parties' agreement." <u>See</u>, <u>Fed. R. Civ. P.</u>, Rule 23(h); <u>Evans v. Jeff D.</u>, 475
10   U.S. 717, 734-735, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986). "Attorneys' fees
11   provisions included in proposed class action agreements are, like every other aspect
12   of such agreements, subject to the determination whether the settlement is
13   fundamentally fair, adequate and reasonable." <u>Staton v. Boeing Co</u>., 327 F.3d 938,
14   964 (9th Cir. 2003) (internal quotation marks omitted).  In this case, the Settlement
15   Agreement allows for Plaintiff to seek an award of attorneys' fees up to $75,000 and
16   an award of costs up to $10,000. (<u>Orshansky Decl</u>. ¶ 38.)

17   In "common fund cases" like this one, a court has discretion to award
18   attorneys' fees as either a percentage of the common fund or by using the lodestar
19   method. <u>Id</u>. at 967-968.  The percentage of the fund method is appropriate for several
20   reasons. The percentage method comports with the legal marketplace, where
21   plaintiffs' counsel's success is frequently measured in terms of the results they have
22   achieved. <u>See</u>, <u>Swedish Hosp. Corp. v. Shalala</u>, 1 F.3d 1261, 1269 (D.C. Cir. 1993)
23   (in common fund cases, "the monetary amount of the victory is often the true
24   measure of [counsel's] success"). By assessing the fee in terms of the benefit to the
25   class, the percentage method "more accurately reflects the economics of litigation
26   practice" which, "given the uncertainties and hazards of litigation, must necessarily
27   be result-oriented." <u>Id</u>. (internal quotations and citations omitted).

28   ///

In general, people who lack the resources to hire counsel by the hour typically secure legal representation by agreeing to payment of the fee in the form of a percentage of any future recovery. The percentage of the fund approach mirrors this aspect of the market and, accordingly, reflects the fee that would have been negotiated by the class members in advance, had such negotiations been feasible, given the prospective uncertainties and anticipated risks and burdens of the litigation. See, e.g., Paul, Johnson, Alston & Hunt, 886 F.2d 268, 271 (9th Cir. 1989); Sutton v. Bernard, 504 F.3d 688, 692 (7th Cir. 2007).

This percentage approach aligns the incentives of the class members and their counsel and thus encourages counsel to spend their time efficiently and to focus on maximizing the size of the class's recovery, rather than their own lodestar hours. See In re Activision Sec. Litig., 723 F.Supp. 1373, 1375 (N.D. Cal. 1989). See also State of Fla. v. Dunne, 915 F.2d 542, 545 (9th Cir. 1990) (recognizing a "recent ground swell of support for mandating a percentage-of-the-fund approach in common fund cases"). By contrast, the lodestar multiplier method creates a disincentive for early settlement, since counsel's lodestar will necessarily be low early in the litigation. Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1050 n.5 (9th Cir. 2002).

In the Ninth Circuit, 25 percent of the common fund is the "benchmark" for an attorneys' fees award in "mega-fund" class actions in the $50-200 million range. See, e.g., Vizcaino, supra, 290 F.3d at 1047. The Ninth Circuit has instructed that district courts are entrusted with wide discretion to approve fees above or below that benchmark, based on the circumstances of the case. See id. at 1048 ("The 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases."); In re Am. Apparel, Inc. S'holder Litig., No. 10 Civ. 06352, 2014 WL 10212865, at *23 (C.D. Cal. July 28, 2014) ("[I]n most common fund cases, the award exceeds the benchmark"). Where the common fund is below the $50 million "mega-fund" threshold, an award above the 25% benchmark is particularly appropriate.  In fact, "in class action common fund cases the better practice is to set

- 4 -

a percentage fee and that, absent extraordinary circumstances that suggest reasons to lower or increase the percentage, the rate should be set at 30%." In re Activision Sec. Litig., 723 F.Supp. 1373, 1378 (N.D. Cal., 1989). However, "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048 (9th Cir. 2002).

## B.     Class Counsel's Fee Request for 25% of the Common Fund Is Appropriate under the Vizcaino Factors.

Under Vizcaino the relevant factors are: (1) results achieved; (2) risks of litigation; (3) whether there are benefits to the class beyond the immediate generation of a cash fund; (4) whether the percentage rate is above or below the market rate; (5) the contingent nature of the representation and the opportunity cost of bringing the suit; (6) reactions from the class; and (7) a lodestar cross-check. Id. at 1048-1052.

### 1.     The "Results Achieved," "Risks of Litigation," and "Benefits to the Class" Factors

Class Counsel achieved an excellent result for Class Members, including significant monetary benefits. To begin, a $300,000 class settlement made available to 391 Class Members is a substantially meaningful recovery given that the statutory damages range under the primary nationwide FCRA claim is $100 to $1,000. 15 U.S.C. § 1681n(a)(1)(A). It is also worth noting that this is not a claims-made settlement fund with a reversion of unpaid funds, which typically results in less value being conveyed to class members, since not all class members file claims. Here, all dollars are being paid out *automatically* to participating Class Members in this *non-reversionary* Settlement. (Orshansky Decl. ¶ 36.)

Furthermore, Defendant vigorously refuted Plaintiff's claims with myriad legal defenses, including raising sixteen (16) affirmative defenses. *See,* Defendant's Answer to FAC, filed on April 02, 2019 [D.E. 21]. Among the affirmative defenses

- 5 -

raised, Defendant asserts that it had multiple permissible purposes for obtaining the report in question, that it complied with any and all applicable notice and disclosure requirements (including the "clear and conspicuous" element), that any violation was not willful, and that there were no actual damages and no standing. (Id.) Defendant's victory on any one of these defenses would have eviscerated or severely reduced liability or damages. Although Plaintiff prevailed on the challenges to his threshold pleading, it is likely that these issues would be re-raised after a developed factual record as part of the summary judgment and/or trial. (Orshansky Decl. ¶ 49.) The Settlement is a testament to Class Counsel's diligence and skill in navigating these factual and legal hurdles.

Specifically, for example, Plaintiff must prove that the violation was "willful" under 15 U.S.C. § 1681n(a), but Defendant asserted that any alleged violation of the FCRA does not, in any event, constitute a "willful" violation of the FCRA, which would be necessary to recover statutory damages in this case. In Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 57-59 (2007), the United States Supreme Court explained that "willful" applies not only to "knowingly" violating the FCRA, but to actions that constitute a "reckless disregard of statutory duty." See also Wiles v. State Farm Fire & Cas. Co., 512 F.3d 565, 566 (9th Cir. 2008) (applying the "reckless disregard" standard). Although Safeco clarified that a plaintiff need not establish that defendant "knowingly and intentionally" committed the violations, the Court left room for defendants to claim "reasonable construction" or even "careless construction" of the Act as a defense. See, e.g., Shlahtichman v. 1-800 Contacts, Inc., 615 F.3d 794 (7th Cir. 2010) (holding that a defendant was not liable for statutory damages because the violation arose from a "reasonable construction" that the truncation requirement of § 1681c(g) was inapplicable to email receipts); Long v. Tommy Hilfiger U.S.A., 671 F.3d 371 (3d Cir. 2012) (holding that defendant was not liable under the FCRA because their practice was merely a "careless interpretation" of the law and is not a "willful" violation). (Orshansky Decl. ¶ 50.)

The availability of these defenses, coupled with Plaintiff's burden to show that Defendant engaged in "reckless disregard of statutory duty," makes it challenging for Plaintiff to prove ultimate liability. See In re Toys 'R' Us FACTA Litig., 295 F.R.D. 438, 451 (C.D. Cal. 2014) (finding that the "strength of plaintiff's case" factor "weighs in favor of settlement" where "willfulness" under FCRA is a triable issue); Torres v. Pet Extreme, No. 13-01778-LJO, 2015 U.S. Dist. LEXIS 5136, *13 (E.D. Cal. Jan. 15, 2015) (Findings & Rec. of Mag. Judge) ("Given the uncertainty of litigating this issue of willfulness [under 15 U.S.C. § 1681n]…[this] weighs in favor of settlement"). All these defenses had the potential to end this class action. (Orshansky Decl. ¶ 51.)

Defendant also contested class certification, which was never a foregone conclusion. For example, some courts have refused to grant class certification for statutory violations without further injury on the grounds that liability "would be enormous and completely out of proportion to any harm suffered by the plaintiff." Serma v. Big A Drug Stores, Inc., No. 07-0276 CJC, 2007 U.S. LEXIS 82023, *10 (C.D. Cal. Oct. 9, 2007) (quoting London v. Wal-Mart Stores, Inc., 340 F.3d 1246, 1255 n.5 (11th Cir. 2003)). While the Ninth Circuit clarified that such matters are properly considered at the merits stage, the court also observed that the district court may have the power to reduce the amount as "constitutionally excessive" even if the plaintiff were to prevail.  Bateman v. Am. Multi-Cinema, Inc., 623 F.3d 708, 723 (9th Cir. 2010). These cases embody the hostility of some courts to these types of statutory injury claims, resulting in denial of certification or substantially reduced payments. (Orshansky Decl. ¶ 52.)

In obtaining the $300,000 Settlement, Class Counsel worked extensively and persuasively.[2] This includes time billed for investigating the claims and drafting pleadings, law and motion practice, discovery, reviewing documents and researching

---

[2] A more detailed description of Class Counsels' work is set forth in Plaintiff's Motion For Final Approval Of Class Action Settlement filed concurrently herewith.

legal authorities, preparing for and participating in all-day mediation, and extensive communications among the Parties and counsel. *See,* (Orshansky Decl. ¶¶ 15-30, 71.) See also Section II.B.6., infra. The Class directly benefited from that level of work in the significant monetary results achieved on behalf of 391 Class Members – the vast majority of whom were subject only to the non-compliant statutory disclosure violation, but not any adverse employment action. Cf. Morales Decl. ¶ 5 (identifying 35 Adverse Action Class Members to 391 Disclosure Class Members). It is also worth noting that the significant Settlement results were obtained swiftly. The relatively short timetable from filing suit to settlement reflects the experience, ability, and work expended by Class Counsel.[3] (Orshansky Decl. ¶ 56.)

Here, Class Counsel provided top-notch representation throughout the case and counsel for both Parties vigorously and intensely negotiated every aspect of the Settlement. Based on the foregoing examples of the challenges facing the Class, the three Vizcaino factors – the "results achieved," "risks of litigation," and "benefits to the class" – weigh in favor of Class Counsel's 25% attorneys' fee request.

## 2. The "Market Rate" and "Contingent Nature and Opportunity Costs" Factors

The fourth and fifth Vizcaino factors support Class Counsel's fee request. For example, from the outset of the case to the present, prosecution of this action involved significant financial risk for Class Counsel. Class Counsel undertook this matter solely on a contingent basis with no guarantee of recovery. (Orshansky Decl. ¶ 71.) Class Counsel placed their resources at risk to prosecute this action with no guarantee of success. (Id. ¶ 71.) The contingent fee structure is designed to recognize a fee premium for the fact that counsel commonly assume the risk of nonpayment for their work, waiting years to be paid, and foregoing other work, including perhaps

---

[3] Northern District Judge Charles Breyer noted the benefit of a swift result when deciding class counsel's fees in *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 2672, ECF No. 3396, Order Granting Plaintiffs' Motion For Attorneys' Fees And Costs Relating To The 3.0-Liter Consumer And Reseller Dealer Settlement.

hourly work. *See, e.g.*, <u>Vizcaino</u>, 290 F.3d at 1051 ("Indeed, 'courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases.'") Also, the "opportunity cost" factor is a relevant consideration. <u>See</u>, <u>e.g.</u>, <u>Parks v. Eastwood Ins. Servs., Inc</u>., 240 Fed. App'x 172, 175 (9th Cir. 2007) (approving increase to lodestar multiplier because "[p]reclusion from seeking other employment is a proper basis for enhancement.") Specifically, Class Counsel worked hard to bring this Settlement to completion. Class Counsel devoted significant time towards legal research, discovery, damage analysis, negotiations, among other things. The hours worked on this case had to be pulled away from other files, which is exactly what the <u>Vizcaino</u> "opportunity cost" factor assesses. Thus, Class Counsel took this case on a contingent-fee basis, faced significant risks, and had to forego other financial opportunities to litigate it.

Class Counsel's request for an award of attorneys' fees equal to 25% of the common fund obtained here is directly in line with, or even less than, the attorneys' fees awarded in other common fund settlements. <u>See</u> <u>Paul, Johnson, Alston & Hunt</u>, <u>supra</u>, 886 F.2d at 272; <u>Vizcaino</u>, <u>supra</u>, 290 F.3d at 1047; <u>Six Mexican Workers</u>, <u>supra</u>, 904 F.2d at 1311; <u>Vasquez v. Coast Valley Roofing, Inc</u>., 266 F.R.D. 482, 491 (E.D. Cal. 2010) (noting that "[t]he typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark."); <u>Singer v. Becton Dickinson & Co.</u>, 2010 WL 2196104, *8 (S.D. Cal. June 1, 2010) (stating that the amount of the common fund for a wage and hour class action "falls within the typical range of 20% to 50% awarded in similar cases."); <u>Martin v. AmeriPride Serv., Inc</u>., 2011 WL 2313604 (S.D. Cal. June 9, 2011) (remarking that "courts may award attorney's fees in the 30-40% range in wage and hour class action that result in recovery of a common fund under $10 million").

Plaintiff asserts that it is only fair that every Class Member who benefitted from the opportunity to claim a share of the Settlement pay his or her *pro rata* share

- 9 -

of attorneys' fees. Plaintiff's request for fees at the 25% rate means that Plaintiff seeks an amount of fees less than the amount Class Counsel would be entitled to receive if they represented each Settlement Class Member individually. Equitable considerations dictate that Class Counsel be rewarded for achieving a settlement that confers benefits among so many people, especially without protracted litigation. The favorable result achieved by Class Counsel merits an award of attorneys' fees equal to 25% of the $300,000 made available to Settlement Class Members in this case.

### 3.   The "Reaction of the Class" Factor

The reaction by Class Members confirms the Settlement results were exceptional and that the requested fee award is appropriate. Class Member response has been overwhelmingly positive: out of 391 Class Notices mailed out, only 5 Class Members have opted out, and no objections have been made. (Morales Decl. ¶¶ 5, 8, 11-12).

### 4.   The "Lodestar Cross-check" Factor

As explained above, the fairest way – and the way that best promotes efficiency in litigation – to calculate a reasonable fee when contingency fee litigation has produced a common fund is by awarding Class Counsel a percentage of the total fund. *See, e.g.*, Blum, 465 U.S. at 900 n.16; Six Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. Cal. 1990) (common fund fee is generally "calculated as a percentage of the recovery"); Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 272 (9th Cir. 1989); Morganstein v. Esber, 768 F.Supp. 725, 728 (C.D. Cal. 1991). Nonetheless, even when awarding fees under a common fund method, a lodestar crosscheck is an important criterion for courts to consider before approving a requested award under Rule 23. *See*, Vizcaino, 290 F.3d at 1050 ("[W]hile the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award.") Generally, lawyers seeking awards in class actions seek a multiplier of their lodestar to account for litigation risk and other considerations.

- 10 -

While a modest multiplier would be warranted in this case, here, Class Counsel seeks *less than their lodestar* and have agreed to work on behalf of the Settlement Class until the Settlement, if approved, is finally carried out and monetary awards fully distributed.

A lodestar "cross-check" analysis typically happens in three steps. <u>Cundiff v. Verizon California</u>, 167 Cal.App.4th 718 (2008); <u>Vizcaino</u>, 290 F.3d at 1047.

First, a trial court must determine a baseline guide or "lodestar" figure based on multiplying the reasonable hours expended by a reasonable hourly rate for each attorney involved in the case. <u>Pennsylvania v. Delaware Valley Citizens' Council for Clean Air</u>, 478 U.S. 546, 565 (1986). Second, the court sets a reasonable hourly fee to apply to the time expended, with reference to the prevailing rates in the geographical area in which the action is pending. <u>Bihun v. AT&T Information System</u>, 13 Cal.App.4th 976, 997 (1993) (16 years ago, affirming a $450 per hour rate for a Southern California litigation attorney). Finally, a "multiplier" of the base lodestar is set with reference to the factors described in this brief. <u>See</u> <u>Kerr v. Screen Extras Guild, Inc.</u>, 526 F.2d 67, 70 (9th Cir. 1975); <u>Hanlon</u>, <u>supra</u>, 150 F.3d at 1029 (stating that a lodestar figure "may be adjusted upward or downward to account for several factors including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.")

Here, Class Counsel's lodestar is approximately $84,297.50. (<u>Orshansky Decl</u>. ¶ 75.)

///
///
///
///
///
///

- 11 -

| Attorney | Year | Hours | Rate | Total |
|---|---|---|---|---|
| Anthony J. Orshansky | 1998 | 50.2 | $650 | $32,630.00 |
| Anthony J. Orshansky (est.) | 1998 | 5.0 | $650 | $3,250.00 |
| Justin Kachadoorian | 2008 | 85.5 | $535 | $45,742.50 |
| Justin Kachadoorian (est.) | 2008 | 5.0 | $535 | $2,675.00 |
| | | | **Total** | **$84,297.50** |

Multiplying the attorney hours by the respective hourly rates listed above yields the total lodestar figure of **$84,297.50**. The figure for estimated ("est.") time above reflects the best estimate of Class Counsel, based on experience and the settlement class size, for the additional time that will be expended by Class Counsel between the filing of this Motion and the filing of and hearing on Plaintiff's Motion For Final Approval, plus any follow-up tasks related to effectuating distribution of the Settlement, if approved. (Orshansky Decl. ¶ 76.) Here, no multiplier is necessary because the lodestar itself is ***9,297.50 higher than the percentage of the fund*** request of $75,000 in attorneys' fees. (Id. ¶ 75.)

Federal and California courts alike commonly adjust basic lodestar rates to reflect the fair market value of the attorney's services. Graham v. DaimlerChrysler Corp., 34 Cal.4th 553, 579 (2004); Wershba v. Apple Computer, Inc., 91 Cal.App.4th 224, 255 (2001) (under California law, multipliers typically range from 2 to 4); Vizcaino (3.65 multiplier); Steiner v. American Broadcasting Corp., Inc., 2007 U.S. App. LEXIS 21061 (9th Cir. 2007) (affirming 6.85 multiplier); Wilson v. Bank of Am Natl. Trust & Savs. Assn., No. 643872 (Cal. Sup. Ct. Aug. 16, 1982) (multiplier of 10); Glendora Comm. Redev. Agency v. Demeter, 155 Cal.App.3d 456, 465 (1984) (affirming multiplier of 12, and expressly rejecting argument that fee was either exorbitant or unconscionable). Across all jurisdictions, multipliers of up to three are frequently awarded in common fund cases, though higher multipliers may be warranted. NEWBERG ON CLASS ACTIONS, Alba Conte and Herbert

- 12 -

Newberg, 4th ed., §14.7 at 165 (citing, Brian T. Fitzpatrick, "An Empirical Study of Class Action Settlements and Their Fee Awards, 7 J. Empirical L. Studies 811, 834 (2010)). Often, multipliers of greater than four are warranted.[4]

In this case, **no multiplier is needed** to align the negotiated fee award with the attorney hours **because Class Counsel seeks less than their lodestar**. Class Counsel has nonetheless vouched to continue working on behalf of the Settlement Classes, if the Settlement is approved, to ensure compliance with its terms and distribution of Settlement Class Members' awards without additional fees. Accordingly, the lodestar cross-check affirms that the fee award that has been preliminarily approved clearly falls within the range of reasonableness.

### 5.   Class Counsel's Hourly Rates Are Reasonable

The hourly rates for Class Counsel are reasonable. In assessing the reasonableness of an attorney's hourly rate, courts should consider the prevailing market rate in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. Blum v. Stenston, 465 U.S. 886, 895-896, fn. 11 (1984). Courts look to the geographic community in which the forum is located to determine the hourly rates that should apply. Camacho v. Bridgeport Financial, Inc., 523 F.3d 973, 979 (9th Cir. 2008) ("[a]ffidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, [particularly those setting a rate for the plaintiff's attorney], are satisfactory evidence of the prevailing market rate" (quoting United Steelworkers of Am. v. Phelps Dodge Corp., 896 F.2d 403, 407 (9th Cir. 1990). Class Counsel's customary rates, which were used for purposes of calculating lodestar here, are based on prevailing fees in this geographical area and have been approved in the California and other Ninth Circuit courts. See Bihun, supra, 13 Cal.App.4th at 997 (1993) (affirming a $450 per hour rate for a Southern

---

[4] Vizcaino v. Microsoft Corp., 290 F.3d 1043 (including a Table of Percentage-Based Attorneys' Fee Awards in Common Fund Cases summarizing survey of lodestar multipliers).

California litigation attorney 16 years ago).

In this case, Class Counsel are highly regarded members of the bar who are experienced in the area of FCRA-related statutory and consumer privacy class actions and complex class action litigation. (Orshansky Decl. ¶¶ 66-69.) Class Counsel's hourly rates are commensurate with experience and the prevailing rates among defense and plaintiffs' firms that regularly litigate employment, privacy, and consumer protection class actions. (Id. ¶ 75.)

### 6. Class Counsel's Hours Spent on This Case Are Reasonable

The number of hours worked is also reasonable. Here, Class Counsel will have spent over 145.7 hours litigating this case and bringing the settlement to fruition, for $84,297.50 in lodestar. (Orshansky Decl. ¶ 75.) At the outset of the case, Class Counsel sent a letter to Defendant regarding Plaintiff's claims for violations of the Fair Credit Reporting Act ("FCRA"), the California Investigative Consumer Reporting Agencies Act ("ICRAA"), and the California Unfair Competition Law ("UCL"). (Id. ¶ 15.) After filing, through informal and formal discovery – and after Plaintiff added pressure by filing a motion to compel, *see*, Plaintiff's Motion To Compel Discovery, filed April 17, 2019 [D.E. No. 23] - Defendant produced documents and other evidence regarding the disclosure and authorization forms used during the class period, hiring policies and guidelines, background check procedures, adverse action procedures, information pertaining to PLC's employment practices, and the estimated size of the Disclosure Class and the Adverse Action Class. (Id. ¶¶ 16-17.)

As part of their investigation, Class Counsel culled through Defendant's purported application/disclosure/authorization forms and website materials. (Id. ¶ 18.) Plaintiff and Class Counsel gathered information related to PLC's policies and practices for procuring background checks/consumer reports and taking adverse action, and conducted discovery. (Id. ¶ 18.) A thorough analysis was undertaken by Class Counsel in order to obtain a greater understanding of Defendant's hiring

- 14 -

practices, potential liability for willful violations of the FCRA, and potential damage exposure on a class-wide basis. (Id. ¶ 18.) Lastly, the Parties also fully briefed and submitted their argument positions with respect to Defendant's Motion To Dismiss, *see*, [D.E. 10, 12, and 17], after which Plaintiff was able to file the operative FAC and advance the case beyond the pleading stage. (Id. ¶¶ 12-13.)

These examples demonstrate the quality of work performed and attention to detail by Class Counsel. Further, Class Counsel's responsibilities will not end with final approval. Class Counsel will remain available to answer any Settlement Class Member inquiries and to work with Defendant to complete administration and remedy any issues that may arise with respect to this Settlement. (Id. ¶ 77.) Based on prior experience, this ongoing work will likely add further hours of work by Class Counsel and their staff. (Id. ¶ 77.) Class Counsel therefore posit that not only were the hours put into this case reasonable, they also served the public good by making available considerable consideration – *a non-reversionary $300,000 to be paid out fully to Settlement Class Members* – to compensate for alleged FCRA and California consumer protection violations.

Consideration of these factors supports Class Counsel's request for attorneys' fees in the amount of $75,000, which is 25% of the $300,000 settlement fund, as fair and reasonable compensation for the real and tangible results achieved for the Settlement Class Members.

## C.   Class Counsel's Request for Reimbursement of Litigation Costs Is Also Reasonable.

"Attorneys who create a common fund for the benefit of a class are entitled to be reimbursed for their out-of-pocket expenses incurred in creating the fund so long as the submitted expenses are reasonable, necessary and directly related to the prosecution 175515, at *62-63 (N.D. Cal. Dec. 19, 2016); In re United Energy Corp. Sec. Litig., 1989 WL 73211, at *6 (C.D. Cal. March 9, 1989) (quoting Newberg, Attorney Fee Awards of the action." In re Optical Disk Drive Prods. Antitrust Litig.,

2016 U.S. Dist. LEXIS § 2.19 (1987)); <u>Vincent</u>, <u>supra</u>, 557 F.2d at 769 ("[T]he doctrine is designed to spread litigation costs proportionately among all the beneficiaries so that the active beneficiary does not bear the entire burden alone and the 'stranger' beneficiaries do not receive their benefits at no cost to themselves.") The requested costs must be relevant to the litigation and reasonable in amount. <u>In re Media Vision Tech. Sec. Litig.</u>, 913 F.Supp. 1362, 1366 (N.D. Cal. 1996).

Pursuant to the Settlement, Class Counsel may seek reimbursement of litigation expenses up to $10,000, <u>see</u> <u>Settlement Agreement</u> ¶ B.1.a.i, and to date, Class Counsel have incurred $7,012.45 in costs. These costs include (1) filing fees; (2) mediation fees; and (3) mailing, postage, delivery, and service of documents - but are exclusive of costs for legal research, travel, and copy charges. (<u>Orshansky Decl</u>. ¶ 79.) Further, Class Counsel will continue to incur costs beyond this amount for the benefit of the Class (<i>e.g.</i>, providing courtesy copies of final approval papers, traveling to the Final Approval Hearing). Class Counsel have reviewed accounting records and invoices and can attest to the appropriateness and necessity of the costs. (<u>Id</u>. ¶ 80.) The costs incurred by Class Counsel in this matter benefited the Class Members and are of the type routinely billed by attorneys in such litigation and are reasonable. (<u>Id</u>. ¶ 81). No Class Members have objected to the request for litigation costs. (<u>Morales Decl</u>. ¶ 11.) Accordingly, Class Counsel respectfully request that the Court award Class Counsel costs in the amount of $7,012.45 as incurred in litigating this matter.

**D.    The Requested Class Representative Incentive Award Is Reasonable and Should Be Granted.**

It is customary and appropriate to provide a payment to the Named Plaintiff for services to the class as Class Representative. <u>Van Vranken v. Atlantic Richfield Co.</u>, 901 F.Supp. 294 (N.D. Cal. 1995). Plaintiff is a member of both the Disclosure Class and the Adverse Action Class, and is a highly motivated Class Member given that he not only had a non-compliant consumer report procured on him, but was also

- 16 -

denied employment as a result. (<u>Ballard Decl</u>. ¶¶ 5-6.) The named Plaintiff and, upon preliminary approval having been granted, the Class Representative, Dwayne Ballard, spent considerable time and effort – approximately 35 to 40 hours – in the prosecution of this action. (<u>Id</u>. ¶ 9.) His efforts included, but were not limited to: independently researching the law, searching for attorneys, lengthy communications with his counsel, production of relevant documents, identification of potential witnesses, providing factual information in support of his claims, personally reviewing documents, discussing damages models, attending a full-day mediation, discussing the terms of the settlement with his attorneys, reviewing the Settlement website, inquiring about class participation rates, and regularly communicating with his attorneys about the status of the litigation. (<u>Ballard Decl</u>. ¶ 8.) (<u>Orshansky Decl</u>. ¶ 83.)

Plaintiff served vigorously and effectively throughout the duration of his role as Class Representative – and without condition to any promise or guarantee of financial gain and/or incentive award. (<u>Ballard Decl</u>. ¶ 14.) Plaintiff's support for the Settlement is wholly unconditional. He is aware that, since the close of the response period, 386 of 391 Class Members have chosen to participate in the Settlement with the result that individuals in the Disclosure Class will receive a payment of approximately $457.75 and that individuals in the Adverse Action Class will receive a double payment of approximately $915.50, because the liability and injury were arguably higher for those individuals. (<u>Id</u>. ¶¶ 11-12.) Plaintiff is also aware that, since filing his complaint, PLC has changed its practices to incorporate use of FCRA-compliant forms and providing applicants and employees with a copy of their report prior to taking adverse action. (<u>Id</u>. ¶ 13.) Thus, Plaintiff continues to believe in and support the Settlement as fairly and adequately serving the interests of Class Members. (<u>Id</u>. ¶¶ 12-13.)

Legally, Plaintiff's request of approximately 1.6% of the Settlement Fund is consistent with numerous courts that have approved enhancements awards which are

1  1-2% of the total settlement fund, or higher. See Odrick v. UnionBanCal. Corp.,

2  2012 WL 6019495, at *7 (N.D. Cal. Dec. 3, 2012) (awarding $5,000 service awards

3  to class members even where settlement was reached early in litigation); Hopson v.

4  Hanesbrands, Inc., 2009 WL 928133, *10 (N.D. Cal. Apr. 3, 2009) (observing that

5  "In general, courts have found that $5,000 incentive payments are reasonable);

6  Sandoval v. Tharaldson Employee Mgmt., Inc., 2010 WL 2486346, at *10 (C.D.

7  Cal. June 15, 2010) [1%]; Jacobs v. Cal. State Auto. Ass'n Inter-Ins. Bur., 2009 WL

8  3562871, at *5 (N.D Cal. Oct. 27, 2009) (noting that in the Northern District of

9  California, a $5,000 payment is "presumptively reasonable"); Williams v. Costco

10 Wholesale, Corp., 2010 WL 2721452, at *7 (S.D. Cal. July 7, 2010) (approving

11 incentive award of $5,000 in $440,000 settlement, finding the amount "well within

12 the acceptable range awarded in similar cases"); Thieriot v. Celtic Ins. Co., 2011

13 WL 1522385, *8 (N.D. Cal. Apr. 21, 2011) (approving incentive award representing

14 1.8%).[5] Moreover, as distinct from the concerns raised by the Ninth Circuit case of

15 Radcliffe v. Experian Information Solutions, Inc., 715 F.3d 1157 (9th Cir. 2013),

16 here, Plaintiff has explicitly declared unequivocal support of the Settlement and with

17 the understanding that any incentive award is wholly within the Court's discretion.

18 (Ballard Decl. ¶¶ 12-14.) As a direct result of Plaintiff's efforts, hundreds of Class

19 Members stand to benefit. Class Counsel, therefore, fully support the negotiated

20 service payment of $5,000 to Plaintiff as being fair, reasonable, and appropriate.

21 ///

22 ///

23 ///

24

25 [5] In fact, requested service awards in other consumer privacy type statutory violation cases, such as Telephone Consumer Protection Act ("TCPA"), have been considerably higher. See, e.g., Desai
26 v. ADT Security Services, Inc. No. 11-1925 (N.D. Ill. Feb. 27, 2013) [Doc. 243, ¶ 20] (awarding $30,000 incentive awards in TCPA class settlements; Ikuseghan v. Multicare Health Svs., 2016
27 WL 4363198, at *3 (W.D. Wash. 2016) (finding an incentive award of $15,000 to be reasonable); Landsman & Funk, P.C. v. Skinder-Strauss Assocs., 2015 WL 2383358, at *9 (D.N.J. May 18, 2015), aff'd, 639 F.App.'x 880 (3rd Cir. 2016) (awarding $10,000 to class representative for junk
28 fax case).

- 18 -

## III.   CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that this Court award Class Counsel attorneys' fees of $75,000 which equals 25% of the $300,000 settlement, $7,012.45 as reimbursement for litigation costs incurred, and $5,000 as incentive award to Plaintiff, as being fair, reasonable, and appropriate.

Dated: January 24, 2020

Respectfully submitted,
**COUNSELONE, P.C.**

By: /s/ *Anthony J. Orshansky*
    Anthony J. Orshansky
    Justin Kachadoorian
Attorneys for Plaintiff Dwayne Ballard and
the Settlement Class Members